## TORREY v. PECK *et al.*

1. Where the trial court, by its instructions, to which no exception was taken, submitted to the jury certain questions only as those on which the right of recovery depended, error in the admission or exclusion of

evidence which had no bearing upon either of such questions is without prejudice.

2. Error in overruling a motion to direct a verdict for defendant at the close of plaintiff's case, or a motion to dismiss, is waived where defendant fails to renew the motion after all the evidence has been presented.

(Opinion filed August 29, 1900.)

Appeal from circuit court, Minnehaha county. Hon. JOSEPH W. JONES, Judge.

Action by H. C. Torrey against Porter P. Peck and the Minnehaha National Bank impleaded with Peter Gallagher. Judgment for plaintiff, and defendants appeal. Affirmed.

The facts are stated in the opinion.

*Aikens & Judge*, for appellants.

*Keith & Warren*, for respondent.

Ownership of personal property is a question to which a witness can testify. Stiener v. Traumn, 13 So. 366; Knapp v. Smith, 27 N. Y. 277; Sweet v. Little, 14 N. Y. 465.

HANEY, J. It is alleged in the complaint that the plaintiff was, on August 6, 1895, the owner and in possession of 26,250 pounds of flour at Montrose in this state, of the value of $750, which was on that day taken by defendants, and converted to their own use, to the plaintiff's damage in the sum of $750; and that plaintiff claims the highest market price from date of conversion to the time of trial. The answer is a general denial. Defendants appealed from a judgment in favor of plaintiff and from an order denying a new trial.

It is undisputed: That plaintiff and one W. H. Wilson were at some time prior to December 17, 1894, interested in a roller mill at Montrose. That they were joint owners of cer-

tain flour and other personal property therein. That on that date the following written contract was executed: "1t is here by agreed that W. H. Wilson and H. C. Torrey do hereby reassign to the Minnehaha National Bank all their right, title, and interest in a certain contract entered into between the said W. H. Wilson and the said H. C. Torrey on the first day of August, A. D. 1893, with the said Minnehaha National Bank, for the purchase of certain property known as the 'Montrose Roller Mill,' and the said W. H. Wilson and the said H. C. Torrey waive all rights thereunder. And it is further agreed that the interest of the said W. H. Wilson in the stock of the said mill and the flour and merchandise on hand is hereby assigned to the Minnehaha National Bank, and that out of the proceeds of his said share of said stock the said Minnehaha National Bank shall, when the same is converted into money, credit the said sum of $300 upon a certin note for $355 made by the said W. H. Wilson to the said Minnehaha National Bank. Dec. 17th, 1894. [Signed] Minnehaha National Bank, by Porter P. Peck, President. W. H. Wilson. H. C. Torrey. Attest: W. L. Baker, Cashier." It is also undisputed that shortly prior to the making of this contract the partnership existing between plaintiff and Wilson was dissolved, the plaintiff retaining possession of the mill and its contents; that on August 6, 1895, defendant Peck, acting for the defendant bank, took from the mill the quantity of flour alleged in the complaint, without the plaintiff's knowledge or consent, and sold it in Sioux Falls for the benefit of the bank; and that the flour so taken was not the same flour that was in the mill when the foregoing contract was executed. It was contended by defendants, and they introduced evidence tending to prove, that an oral agreement

was entered into by the plaintiff and the bank, whereby the bank allowed the interest in the flour and other personal property acquired by it from Wilson to remain in the mill for the convenience of operating the same; whereby it was agreed that plaintiff was to keep up the stock to what it was when the bank acquired Wilson's interest; and whereby it was agreed that the bank should at a later time remove its share of the flour and merchandise. The making of this oral agreement was denied by the plaintiff. In its charge to the jury, to which no exceptions were taken, the learned circuit court construed the written contract as containing two distinct and independent provisions, and it submitted to the jury two issues of fact, namely, the existence of the oral agreement to allow the property to remain in the mill, and the amount of plaintiff's recovery if it should be found that there was such an oral agreement. Concerning this oral agreement there was a sharp conflict in the evidence, and the verdict cannot be disturbed. With the issues thus defined, we will proceed to consider whether the record discloses any reversible errors at law duly excepted to by the defendants.

The complaint was evidently drawn upon the theory that plaintiff was entitled to recover the highest market value of the property at any time between the conversion and the verdict, without interest (Comp. Laws, § 4603); and he was permitted to introduce evidence of its value at the time of the trial. Subsequently this theory was abandoned. Plaintiff introduced evidence of its value when taken, and the court charged the jury that, if they found for the plaintiff, he would be entitled to recover the value of the flour at the time it was taken, with interest thereon at 7 per cent. If the court erred in allowing

evidence to be received of the highest market value, the error was cured by its charge to the jury. It certainly should not be presumed that the jury disregarded the clear and explicit directions of the court in this respect. S. H. Cloman, an employe of the plaintiff, was at the mill when the flour was taken. It is contended that the court erred in overruling defendants' objections to the following question propounded to him upon his direct examination as a witness for the plaintiff, "And you were not acting for Mr. Torrey in taking out this flour, if you did take any out, or were you?" A. "I was not acting for Torrey." This error, if it was an error, was cured by the admission of record "that Mr. Cloman was not working for Torrey at the time the flour in question was taken from the mill by the defendants." Plaintiff was asked, when on the witness stand, "Whose flour was that, Mr. Torrey?" He answered "It was my flour." Defendants objected on the ground that the question called for a conclusion of the witness. Whether, under ordinary circumstances, one who claims to own personal property should be permitted to testify to the ultimate fact of ownership, the authorities are conflicting. But it cannot be successfully contended that this answer could have prejudiced the rights of defendants in this case because the jury were expressly instructed as to what facts the plaintiff's recovery depended upon and he was not allowed to testify to his conclusion regarding such facts. The plaintiff, as a witness on his own behalf, was permitted to testify, in rebuttal, that when he signed the written contract set forth herein there was a trade being made for the mill; that it was understood, if the trade went through, the contract was to be delivered,—if it did not, it was to be destroyed; and that the trade did not go through.

In view of the construction subsequently given to the contract, perhaps this evidence should have been excluded, but we would need to presume that jurors are wanting in ordinary integrity and intelligence to conclude that they would be influenced by this evidence under the charge of the court which clearly and completely withdrew it from their consideration. The plaintiff, on cross-examination, testified to the difference between the price of flour at Montrose and Sioux Falls, and stated that he got the top price for his flour at the latter place. Defendant Peck testified that he sold the flour in question to the Bee Hive in Sioux Falls. It is contended the court erred in not allowing him to answer the following questions propounded by his own attorney: "I will ask you how much you sold that flour to the Bee Hive for, on or about the 6th day of August, 1895?" "I will ask you whether or not they knew who made the flour." The price of the flour at Sioux Falls was immaterial, and, of course, the price for which defendants sold it was immaterial. The fact that defendants, by their cross-examination of the plaintiff, had elicited immaterial evidence on this subject, did not render the excluded testimony of Mr. Peck admissible.

It is contended the court erred in denying the defendants' motion (made at the close of plaintiff's testimony in chief) to dismiss the action for the reasons therein stated. This was, in effect, a motion to direct a verdict in favor of defendants. An error cannot be predicted thereon, because it was not renewed at the close of all the testimony. For the same reason the court did not err in denying the motion of defendant Peck for the direction of a verdict in his favor, made at the close of plaintiff's testimony in chief, and not renewed at the conclusion

of all the testimony. Error in overruling a motion to direct a verdict for defendant at the close of plaintiff's case is waived where defendant fails to renew the motion after all the evidence has been presented. Seim v. Krause 13 S. D. 530 83 N. W. 583; Brace v. VanEps, 12 S. D. 191, 80 N. W. 197; Haggarty v. Strong, 10 S. D. 585, 74 N. W. 1037. The result might have been more satisfactory if the parties to this controversy acting upon the theory that the bank had succeeded to the interest of Wilson in certain undivided personal property, had determined their respective rights by an action in equity in the nature of an accounting; but the defendants adopted a different course when they took possession of the property in the plaintiff's absence, and when they answered in this action. Upon the record before us they have no legal cause for complaint, and the judgment of the circuit court is affirmed.